UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE DARRAH**

**MAGISTRATE JUDGE MASON**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) No.  12 CR 559 |
| ANA NERISSA TOLENTINO, | ) |
| also known as "Nerie," | ) Violations: Title 18, United States |
| FREDERICK MAGSINO, | ) Code, Sections 371, 1035, and 1347; |
| EMMANUEL NWAOKOCHA, | ) Title 42, United States Code, Sections |
| also known as "Ed Norton," | ) 1320a-7b(b)(1)(A)            and |
| MASOOD SYED, | ) 1320a-7b(b)(2)(A) |
| TITIS JACKSON, | ) |
| also known as "Titus," | ) **SUPERSEDING INDICTMENT** |
| JENETTE GEORGE, | ) |
| also known as "Jiye," | ) |
| CARLA PHILLIPS-WILLIAMS, | ) |
| JENNIFER HOLMAN, | ) |
| ARMANDO TOLENTINO, | ) |
| also known as "Ding," | ) |
| GLORIA ZISMAN, and | ) |
| LIONEL PAUL GASSMANN | ) |
| | ) |

**FILED**

SEP X 4 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**COUNT ONE**

The SPECIAL MARCH 2013 GRAND JURY charges:

1.      At times material to this Superseding Indictment:

a.      Medicare was a Federal health care benefit program, as defined in Title 18, United States Code, Section 24(b), that provided free and below-cost health care benefits, including, among other things, medically necessary in-home health care services for persons who were confined to their homes. A patient was eligible for home health care coverage if, among other conditions, that patient had a condition due to illness or injury that restricted the person's ability to leave his or her place of residence.

1

b.    Medicare typically approved the provision of home health care to patients who were confined to their homes in 60-day periods.  The 60-day periods were referred to as cycles or episodes, and an initial cycle of home health care was known as a Start of Care cycle. A physician was required to approve a patient's plan of care, which was typically prepared by the home health agency, and to certify that the patient was confined to his or her home on a Home Health Certification and Plan of Treatment, sometimes known as a Form 485.  Subsequent cycles were referred to as "recertifications" because a patient was required to be recertified by a physician to receive additional 60-day cycles of home health care.  A subsequent Start of Care cycle, after a patient had been discharged from a home health agency, was a repeat admission. Repeat admissions required a physician to approve a patient's plan of care, which was typically prepared by the home health agency, and to certify that the patient was confined to his or her home.

c.    Rosner Home Healthcare, Inc. was a licensed provider of home health care services and was located in Skokie, Illinois and later in Morton Grove, Illinois.  Rosner provided home health care services to clients who purportedly were confined to their homes and through its officers and agents submitted claims to Medicare for reimbursement for home health care services purportedly provided to clients.  Defendant ANA NERISSA TOLENTINO, defendant FREDERICK MAGSINO, defendant ARMANDO TOLENTINO, and Individual A owned Rosner.

d.    Rosner nurses filled out nursing assessments of their patients at the beginning of an initial episode of care, at the beginning of each recertification, and when a patient was discharged from Rosner's services.  The information in the assessments was used by Rosner in part to bill Medicare.

2

e.     Rosner billed Medicare for more than $10,000,000 for the provision of home health care services for patients.

f.     Defendants EMMANUEL NWAOKOCHA and MASOOD SYED were physicians licensed in Illinois.

g.     Defendants ARMANDO TOLENTINO, GLORIA ZISMAN and LIONEL PAUL GASSMANN were nurses for Rosner.

h.     JENETTE GEORGE owned and operated a company called Ttenej Senior Referral Agency, which provided services to senior citizens, including referring individuals to home health agencies for home health services.

i.     JENNIFER HOLMAN was employed as an office manager at a doctor's office.

j.     TITIS JACKSON and CARLA PHILLIPS-WILLIAMS were not health-care workers.

2.     Beginning no later than approximately January 2008, and continuing through at least April 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARMANDO TOLENTINO, also known as "Ding,"
EMMANUEL NWAOKOCHA, also known as "Ed Norton,"
MASOOD SYED,
GLORIA ZISMAN, and
LIONEL PAUL GASSMANN,

defendants herein, together with others known and unknown to the Grand Jury, did participate in a scheme to defraud a health care benefit program, namely Medicare, and to obtain, by means of false and fraudulent representations, money under the control of a health care program, namely Medicare, in connection with the delivery of or payment for health care services in violation of Title 18, United States Code, Section 1347.

3

## Overview of the Scheme

3.     It was part of the scheme that defendants ARMANDO TOLENTINO, EMMANUEL NWAOKOCHA, MASOOD SYED, LIONEL PAUL GASSMANN, and GLORIA ZISMAN knowingly and willfully participated in a scheme to cause Rosner to bill claims for medically unnecessary services, namely, home health services that were rendered to patients who did not qualify for reimbursement from Medicare for such services because they were not confined to their homes and did not require such services, and to make false statements so that the services would appear to be medically necessary.

4.     It was further part of the scheme that defendants EMMANUEL NWAOKOCHA and MASOOD SYED each referred patients who came to their respective offices for visits to Rosner for home health services, knowing that such patients were not confined to their homes and did not need home health services.

5.     It was further part of the scheme that individuals acting on behalf of Rosner, including ZISMAN, authorized and signed Form 485s and telephone orders that made it appear that physicians had referred patients for home health services, knowing that such patients had in fact been referred to Rosner by non-physician marketers and that Rosner itself was referring the patients to physicians.

6.     It was further part of the scheme that defendants EMMANUEL NWAOKOCHA and MASOOD SYED, and other physicians, each signed and caused to be signed Form 485s in which each falsely certified that patients were confined to their homes and required home health services from Rosner.

7.     It was further part of the scheme that Rosner offered and paid remuneration, including kickbacks and bribes, to physicians, including defendants EMMANUEL

4

NWAOKOCHA and MASOOD SYED, to induce them to refer patients to Rosner and to sign Form 485s.

8.     It was further part of the scheme that defendants ARMANDO TOLENTINO, GLORIA ZISMAN, and LIONEL PAUL GASSMANN each put false information about patients' conditions into nursing assessments, such as falsely claiming that patients needed assistance with daily activities of living such as dressing themselves and using the toilet, knowing that this information would be submitted to Medicare and used to increase payments to Rosner.

9.     It was further part of the scheme that defendants ARMANDO TOLENTINO, GLORIA ZISMAN, and LIONEL PAUL GASSMANN put false information into the nursing assessments done at the start of a period of care and at recertifications so that it would appear that the patients needed Rosner's services and benefited from such services, such as falsely claiming at the start of a period of care that patients needed assistance with daily living activities such as dressing themselves and using the toilet.   Defendants ARMANDO TOLENTINO, GLORIA ZISMAN, and LIONEL PAUL GASSMANN accurately stated in the discharge assessments that patients did not need such assistance, and then put false information at the time of a repeat admission that patients again needed such assistance.

10.     It was further part of the scheme that individuals acting on behalf of Rosner signed letters to be placed in Rosner's files in the event of an audit, allegedly informing patients that they were discharged from Rosner's care because they no longer needed care, knowing that Rosner did not provide the letters to patients or otherwise inform the patients that they had been discharged and that they did not need Rosner's care, and knowing that Rosner planned to re-admit those patients soon afterwards.

5

11.     It was further part of the scheme that defendants ARMANDO TOLENTINO,

EMMANUEL NWAOKOCHA, MASOOD SYED, GLORIA ZISMAN, and LIONEL PAUL

GASSMANN caused Rosner to submit bills to Medicare seeking payment for services that they

knew did not qualify for payment because the patients were not confined to their homes and

because the patients' conditions were not as Rosner and its employees stated.

### Patient EC

12.     It was further part of the scheme that defendant LIONEL PAUL GASSMANN

and others known and unknown to the Grand Jury, caused Rosner to bill claims to Medicare for

multiple episodes of care regarding Patient EC that began in or about May 2010 and continued

through in or about July 2012, knowing that Rosner's claims were based in part on false

information about Patient EC.

13.     It was further part of the scheme that on or about February 19, 2012, LIONEL

PAUL GASSMANN conducted a nursing visit with Patient EC during which GASSMANN

made statements on a discharge assessment, including accurate statements that Patient EC

understood his medical condition and did not need assistance with certain daily activities of

living, knowing that such statements would make it appear that Rosner had helped improve

Patient EC's condition over the preceding episodes.

14.     It was further part of the scheme that on or about February 19, 2012, Individual A

signed and placed in Rosner's files a discharge letter that was addressed to Patient EC and that

stated that "no further care was needed" and that Patient EC was being discharged from Rosner's

services, knowing that Rosner would not actually send the discharge letter to Patient EC or

otherwise provide this information to Patient EC.

6

15.     It was further part of the scheme that on or about May 9, 2012, GASSMANN made false statements on a nursing assessment, including statements that Patient EC had a "knowledge deficit" regarding his medical condition and needed assistance with certain daily activities of living.

16.     It was further part of the scheme that on or about May 9, 2012, Rosner caused to be prepared a Form 485 that falsely stated that Patient EC was "confined to his home" and required home health services and that ordered services from May 9, 2012 through July 7, 2012.

17.     It was further part of the scheme that on or about May 9, 2012, an individual acting on behalf of Rosner signed, on behalf of Rosner, a Form 485 that ordered services for Patient EC from May 9, 2012 through July 7, 2012.

18.     It was further part of the scheme that on or about May 30, 2012, a physician signed and caused to be signed the Form 485 ordering Rosner's services for Patient EC from May 9, 2012 through July 7, 2012.  In so doing, the physician falsely certified that Patient EC was "confined to his home" and "needs intermittent skilled nursing care."

19.     It was further part of the scheme that on or about July 10, 2012, LIONEL PAUL GASSMANN caused to be submitted a claim to Medicare seeking payment for the services provided by Rosner for Patient EC from May 9, 2012 through July 7, 2012, knowing that payment on this claim was not warranted because Patient EC was not confined to his home and because the claim was based in part on false statements about Patient EC.

### Patient JE

20.     It was further part of the scheme that defendants MASOOD SYED, GLORIA ZISMAN, and others known and unknown to the Grand Jury caused Rosner to bill claims to Medicare for multiple episodes of care regarding Patient JE that began in or about July 2008 and

7

continued through in or about July 2012, knowing that Rosner's claims were based in part on false information about Patient JE.

21. It was further part of the scheme that on or about December 22, 2011, GLORIA ZISMAN conducted a nursing visit with Patient JE during which ZISMAN made statements on a discharge assessment, including accurate statements that Patient JE did not need assistance with certain daily activities of living, knowing that such statements would make it appear that Rosner had helped improve Patient JE's condition over the preceding episodes.

22. It was further part of the scheme that on or about December 22, 2011, Individual A signed and placed in Rosner's files a discharge letter that was addressed to Patient JE and that stated that "no further care was needed" and that Patient JE was being discharged from Rosner's services, knowing that Rosner would not actually send the discharge letter to Patient JE or otherwise provide this information to Patient JE.

23. It was further part of the scheme that on or about March 1, 2012, ZISMAN conducted a nursing visit with Patient JE during which she made false statements on a nursing assessment, including statements that Patient JE had a "knowledge deficit" of her medical condition and needed assistance with certain daily activities of living.

24. It was further part of the scheme that on or about March 1, 2012, Rosner caused to be prepared a Form 485 that falsely stated that Patient JE was confined to her home and required home health services and that ordered services from March 1, 2012 through April 29, 2012.

25. It was further part of the scheme that on or about March 1, 2012, Individual A signed, on behalf of Rosner, a Form 485 that ordered services for Patient JE from March 1, 2012 through April 29, 2012.

26.     It was further part of the scheme that on or about March 12, 2012, MASOOD SYED signed the Form 485 ordering Rosner's services for Patient JE from March 1, 2012 through April 29, 2012. In so doing, SYED falsely certified that Patient JE was "confined to her home" and "needs intermittent skilled nursing care."

27.     It was further part of the scheme that on or about March 30, 2012, MASOOD SYED knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $500, in cash, for his referral of Patient JE to Rosner.

28.     It was further part of the scheme that on or about April 30, 2012, GLORIA ZISMAN and MASOOD SYED caused to be submitted a claim to Medicare for the services provided by Rosner for Patient JE from March 1, 2012 through April 29, 2012, knowing that payment on such a claim was not justified because Patient JE was not confined to her home and because the claim was based in part on false statements about Patient JE.

**Patient RP**

29.     It was further part of the scheme that defendants EMMANUEL NWAOKOCHA, LIONEL PAUL GASSMANN, and others known and unknown to the Grand Jury caused Rosner to bill claims to Medicare for multiple episodes of care regarding Patient RP that began in or about July 2010 and continued through in or about July 2012, knowing that Rosner's claims were based in part on false information about Patient RP.

30.     It was further part of the scheme that on or about December 25, 2011, LIONEL PAUL GASSMANN conducted a nursing visit with Patient RP during which GASSMANN made statements on a discharge assessment, including accurate statements that Patient RP understood her medical condition and did not need assistance with certain daily activities of

9

living, knowing that such statements would make it appear that Rosner had helped improve Patient RP's condition over the preceding episodes.

31.     It was further part of the scheme that on or about December 26, 2011, Individual A signed and placed in Rosner's files a discharge letter that was addressed to Patient RP and that stated that "no further care was needed" and that Patient RP was being discharged from Rosner's services, knowing that Rosner would not actually send the discharge letter to Patient RP or otherwise provide this information to Patient RP.

32.     It was further part of the scheme that on or about March 1, 2012, GASSMANN made false statements on a nursing assessment regarding Patient RP, including statements that Patient RP had a "knowledge deficit" regarding her medical condition and needed assistance with certain daily activities of living.

33.     It was further part of the scheme that on or about March 1, 2012, Rosner caused to be prepared a Form 485 that falsely stated that Patient RP was confined to her home and required home health services and that ordered services from March 1, 2012 through April 29, 2012.

34.     It was further part of the scheme that on or about March 1, 2012, Individual A signed, on behalf of Rosner, a Form 485 that ordered services for Patient RP from March 1, 2012 through April 29, 2012.

35.     It was further part of the scheme that on or about March 12, 2012, EMMANUEL NWAOKOCHA signed the Form 485 authorizing Rosner's services for Patient RP from March 1, 2012 through April 29, 2012. In so doing, NWAOKOCHA falsely certified that Patient RP was "confined to her home" and "needs intermittent skilled nursing care."

36.     It was further part of the scheme that on or about March 23, 2012, EMMANUEL NWAOKOCHA knowingly and willfully solicited and received, directly and indirectly, overtly

10

and covertly, remuneration from Rosner in the amount of approximately $500, in cash, for his referral of and re-admission of Patient RP to Rosner.

37.     It was further part of the scheme that on or about May 11, 2012, EMMANUEL NWAOCKOHA and LIONEL PAUL GASSMANN caused to be submitted a claim to Medicare for the services provided by Rosner for Patient RP from March 1, 2012 through April 29, 2012, knowing that payment on such a claim was not justified because Patient RP was not confined to her home and because the claim was based in part on false statements about Patient RP.

### Patient JS

38.     It was further part of the scheme that defendant GLORIA ZISMAN and others known and unknown to the Grand Jury caused Rosner to bill claims to Medicare for multiple episodes of care regarding Patient JS that began in or about March 2010 and continued through in or about July 2012, knowing that Rosner's claims were based in part on false information about Patient JS.

39.     It was further part of the scheme that on or about February 28, 2012, GLORIA ZISMAN conducted a nursing visit with Patient JS during which ZISMAN made statements on a discharge assessment, including accurate statements that Patient JS did not need assistance with certain daily activities of living, knowing that such statements would make it appear that Rosner had helped improve Patient JS's condition over the preceding episodes.

40.     It was further part of the scheme that on or about February 28, 2012, Individual A signed and placed in Rosner's files a discharge letter that was addressed to Patient JS and that stated that "no further care was needed" and that Patient JS was being discharged from Rosner's services, knowing that Rosner would not actually send the discharge letter to Patient JS or otherwise provide this information to Patient JS.

11

41.    It was further part of the scheme that on or about May 8, 2012, ZISMAN made false statements on a nursing assessment regarding Patient JS, including statements that Patient JS had a "knowledge deficit" regarding his medical condition and needed assistance with certain daily activities of living.

42.    It was further part of the scheme that on or about May 8, 2012, Rosner caused to be prepared a Form 485 that falsely stated that Patient JS was confined to his home and required home health services and that ordered services from May 8, 2012 through July 6, 2012.

43.    It was further part of the scheme that on or about May 8, 2012, Individual A signed, on behalf of Rosner, a Form 485 that ordered services for Patient JS from May 8, 2012 through July 6, 2012.

44.    It was further part of the scheme that in or about May 2012, a physician signed and caused to be signed the Form 485 ordering Rosner's services for Patient JS from May 8, 2012 through July 6, 2012. In so doing, the physician falsely certified that Patient JS was "confined to his home" and "needs intermittent skilled nursing care."

45.    It was further part of the scheme that on or about July 6, 2012, GLORIA ZISMAN caused to be submitted a claim to Medicare for the services provided by Rosner for Patient JS from May 8, 2012 through July 6, 2012, knowing that payment on such a claim was not justified because Patient JS was not confined to her home and because the claim was based in part on false statements about Patient JS.

### Patient BJ

46.    It was further part of the scheme that defendant ARMANDO TOLENTINO and others known and unknown to the Grand Jury caused Rosner to bill claims to Medicare for multiple episodes of care regarding Patient BJ that began in or about 2004 and continued through

in or about 2013, knowing that Rosner's claims were based in part on false information about Patient BJ.

47.     It was further part of the scheme that on or about November 12, 2012, ARMANDO TOLENTINO conducted a nursing visit with Patient BJ during which ARMANDO TOLENTINO made statements on a discharge assessment, including accurate statements that Patient BJ did not need assistance with certain daily activities of living, knowing that such statements would make it appear that Rosner had helped improve Patient BJ's condition over the preceding episodes.

48.     It was further part of the scheme that on or about November 12, 2012, Individual A signed and placed in Rosner's files a discharge letter that was addressed to Patient BJ and that stated that "no further care was needed" and that Patient BJ was being discharged from Rosner's services, knowing that Rosner would not actually send the discharge letter to Patient BJ or otherwise provide this information to Patient BJ.

49.     It was further part of the scheme that on or about February 11, 2013, ARMANDO TOLENTINO made false statements on a nursing assessment regarding Patient BJ, including statements that Patient BJ needed assistance with certain daily activities of living.

50.     It was further part of the scheme that on or about February 11, 2013, Rosner caused to be prepared a Form 485 that falsely stated that Patient BJ was confined to her home and required home health services and that authorized services from February 11, 2013 through April 11, 2013.

51.     It was further part of the scheme that on or about February 11, 2013, Individual A signed, on behalf of Rosner, a Form 485 that ordered services for Patient BJ from February 11, 2013 through April 11, 2013.

13

52. It was further part of the scheme that on or about February 20, 2013, a physician signed and caused to be signed the Form 485 authorizing Rosner's services for Patient BJ from February 11, 2013 through April 11, 2013. In so doing, the physician falsely certified that Patient BJ was "confined to her home" and "needs intermittent skilled nursing care."

53. It was further part of the scheme that defendants ARMANDO TOLENTINO, EMMANUEL NWAOKOCHA, MASOOD SYED, GLORIA ZISMAN, and LIONEL PAUL GASSMANN did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, the purposes and acts done in furtherance of the scheme.

54. On or about April 19, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARMANDO TOLENTINO, also known as "Ding,"

defendant herein, did knowingly and willfully execute a scheme to defraud a health care benefit program, namely Medicare, and to obtain, by means of false and fraudulent representations, money under the control of a health care benefit program, namely Medicare, in connection with the delivery of and payment for health care services, by submitting and causing to be submitted a claim to Medicare seeking payment for services rendered by Rosner regarding Patient BJ from on or about February 11, 2013 through on or about April 11, 2013, knowing that payment on this claim was not warranted because Patient BJ was not confined to her home and because the claim was based in part on false statements about Patient BJ;

In violation of Title 18, United States Code, Section 1347.

14

## COUNT TWO

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     Paragraphs 1 through 53 of Count One of this Superseding Indictment are incorporated here.

2.     On or about April 30, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

MASOOD SYED, and
GLORIA ZISMAN,

defendants herein, did knowingly and willfully execute a scheme to defraud a health care benefit program, namely Medicare, and to obtain, by means of false and fraudulent representations, money under the control of a health care benefit program, namely Medicare, in connection with the delivery of and payment for health care services, by submitting and causing to be submitted a claim to Medicare seeking payment for services rendered by Rosner regarding Patient JE from on or about March 1, 2012 through on or about April 29, 2012, knowing that payment on this claim was not warranted because Patient JE was not confined to her home and because the claim was based in part on false statements about Patient JE;

In violation of Title 18, United States Code, Section 1347.

15

## COUNT THREE

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     Paragraphs 1 through 53 of Count One of this Superseding Indictment are incorporated here.

2.     On or about May 11, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

EMMANUEL NWAOKOCHA, also known as "Ed Norton," and
LIONEL PAUL GASSMANN,

defendants herein, did knowingly and willfully execute a scheme to defraud a health care benefit program, namely Medicare, and to obtain, by means of false and fraudulent representations, money under the control of a health care benefit program, namely Medicare, in connection with the delivery of and payment for health care services, by submitting and causing to be submitted a claim to Medicare seeking payment for services rendered by Rosner regarding Patient RP from on or about March 1, 2012 through on or about April 29, 2012, knowing that payment on this claim was not warranted because Patient RP was not confined to her home and because the claim was based in part on false statements about Patient RP;

In violation of Title 18, United States Code, Section 1347.

## COUNT FOUR

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      Paragraphs 1 through 53 of Count One of this Superseding Indictment are incorporated here.

2.      On or about July 6, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

### GLORIA ZISMAN,

defendant herein, did knowingly and willfully execute a scheme to defraud a health care benefit program, namely Medicare, and to obtain, by means of false and fraudulent representations, money under the control of a health care benefit program, namely Medicare, in connection with the delivery of and payment for health care services, by submitting and causing to be submitted a claim to Medicare seeking payment for services rendered by Rosner regarding Patient JS from on or about May 8, 2012 through on or about July 6, 2012, knowing that payment on this claim was not warranted because Patient JS was not confined to his home and because the claim was based in part on false statements about Patient JS;

In violation of Title 18, United States Code, Section 1347.

## COUNT FIVE

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      Paragraphs 1 through 53 of Count One of this Superseding Indictment are incorporated here.

2.      On or about July 10, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

### LIONEL PAUL GASSMANN,

defendant herein, did knowingly and willfully execute a scheme to defraud a health care benefit program, namely Medicare, and to obtain, by means of false and fraudulent representations, money under the control of a health care benefit program, namely Medicare, in connection with the delivery of and payment for health care services, by submitting and causing to be submitted a claim to Medicare seeking payment for services rendered by Rosner regarding Patient EC from on or about May 9, 2012 through on or about July 7, 2012, knowing that payment on this claim was not warranted because Patient EC was not confined to his home and because the claim was based in part on false statements about Patient EC;

All in violation of Title 18, United States Code, Section 1347.

## COUNT SIX

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     Paragraphs 1(a) through 1(d) and Paragraph 1(g) of Count One of this Superseding Indictment are incorporated here.

2.     On or about February 11, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARMANDO TOLENTINO, also known as "Ding,"

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient BJ needed assistance with daily living activities on a nursing assessment regarding Patient BJ;

In violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT SEVEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      Paragraphs 1(a) through 1(d) and Paragraph 1(f) of Count One of this Superseding Indictment are incorporated here.

2.      On or about March 12, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

MASOOD SYED,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient JE was confined to her home on a Form 485 ordering services by Rosner for Patient JE from on or about March 1, 2012 through on or about April 29, 2012;

In violation of Title 18, United States Code, Section 1035(a)(2).

## **COUNT EIGHT**

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     Paragraphs 1(a) through 1(d) and Paragraph 1(g) of Count One of this Superseding Indictment are incorporated here.

2.     On or about March 1, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

### GLORIA ZISMAN,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient JE needed assistance with daily living activities on a nursing assessment regarding Patient JE;

In violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT NINE

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.        Paragraphs 1(a) through 1(d) and Paragraph 1(f) of Count One of this Superseding Indictment are incorporated here.

2.        On or about March 12, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

EMMANUEL NWAOKOCHA, also known as "Ed Norton,"

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient RP was confined to her home on a Form 485 ordering services by Rosner for Patient RP from on or about March 1, 2012 through on or about April 29, 2012;

In violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT TEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     Paragraphs 1(a) through 1(d) and Paragraph 1(g) of Count One of this Superseding Indictment are incorporated here.

2.     On or about March 1, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

### LIONEL PAUL GASSMANN,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient RP needed assistance with daily living activities on a nursing assessment regarding Patient RP;

In violation of Title 18, United States Code, Section 1035(a)(2).

## **COUNT ELEVEN**

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      Paragraphs 1(a) through 1(d) and Paragraph 1(g) of Count One of this Superseding Indictment are incorporated here.

2.      On or about May 8, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

### GLORIA ZISMAN,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient JS needed assistance with daily living activities on a nursing assessment regarding Patient JS;

In violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT TWELVE

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      Paragraphs 1(a) through 1(d) and Paragraph 1(g) of Count One of this Superseding Indictment are incorporated here.

2.      On or about May 9, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

### LIONEL PAUL GASSMANN,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient EC needed assistance with daily living activities on a nursing assessment regarding Patient EC;

In violation of Title 18, United States Code, Section 1035(a)(2).

**COUNT THIRTEEN**

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.    At times material to this Superseding Indictment:

    a.    Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

    b.    Paragraphs 1(b), 1(c) and 1(j) of Count One of this Superseding Indictment are incorporated here.

2.    Beginning in or about approximately August 2009, and continuing through in or about July 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANA NERISSA TOLENTINO, also known as "Nerie,"<br>
FREDERICK MAGSINO, and<br>
TITIS JACKSON, also known as "Titus,"

defendants herein, together with others known and unknown to the Grand Jury, did conspire to knowingly and willfully cause Rosner to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, to JACKSON to induce him to refer patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

3.    It was part of the conspiracy that beginning in or about August 2009, and continuing through in or about July 2012, defendants ANA NERISSA TOLENTINO, FREDERICK MAGSINO, and TITIS JACKSON, together with others known and unknown to the Grand Jury, agreed that Rosner would pay kickbacks to JACKSON for (i) referring patients to Rosner, (ii) causing patients to begin new Start of Care cycles of home health care with

26

Rosner; and (iii) causing the re-admission of patients previously treated by Rosner. Through these payments, defendants ANA NERISSA TOLENTINO, FREDERICK MAGSINO, and JACKSON sought to increase the patient census at Rosner and to enrich themselves and Rosner.

4.     It was further part of the conspiracy that defendants TOLENTINO and MAGSINO agreed to cause Rosner to pay JACKSON $600 per patient referral and per patient repeat admission after five visits to a patient within a Start of Care cycle. As defendants ANA NERISSA TOLENTINO and FREDERICK MAGSINO knew, the agreement to make payments was intended to induce JACKSON to refer patients to Rosner for home health care services to be reimbursed by Medicare.

5.     In furtherance of and to effect the objects of this conspiracy, on or about March 22, 2012, in the Northern District of Illinois, and elsewhere, defendant FREDERICK MAGSINO knowingly and willfully offered and paid, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $1,800, in cash, to JACKSON for his referral of patients to Rosner.

6.     In furtherance of and to effect the objects of this conspiracy, on or about March 22, 2012, in the Northern District of Illinois, and elsewhere, defendant JACKSON knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $1,800, in cash, in return for his referral of patients to Rosner.

7.     In furtherance of and to effect the objects of the conspiracy, on or about April 26, 2012, in the Northern District of Illinois, and elsewhere, defendant ANA NERISSA TOLENTINO knowingly and willfully offered and paid, directly and indirectly, overtly and

covertly, remuneration in the amount of approximately $2,400, in cash, to JACKSON for his referral of patients to Rosner.

8.      In furtherance of and to effect the objects of this conspiracy, on or about April 26, 2012, in the Northern District of Illinois, and elsewhere, defendant JACKSON knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $2,400, in cash, in return for his referral of patients to Rosner.

9.      In furtherance of and to effect the objects of the conspiracy, on or about May 3, 2012, in the Northern District of Illinois, and elsewhere, defendant ANA NERISSA TOLENTINO knowingly and willfully offered and paid, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $1,200, in cash, to JACKSON for his referral of patients to Rosner.

10.     In furtherance of and to effect the objects of this conspiracy, on or about May 3, 2012, in the Northern District of Illinois, and elsewhere, defendant JACKSON knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $1,200, in cash, in return for his referral of patients to Rosner.

11.     In furtherance of and to effect the objects of this conspiracy, defendants ANA TOLENTINO, FREDERICK MAGSINO, and JACKSON did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, the purposes and acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

28

## COUNT FOURTEEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     At times material to this Superseding Indictment:

       a.     Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

       b.     Paragraphs 1(b), 1(c) and 1(h) of Count One of this Superseding Indictment are incorporated here.

2.     Beginning in or about approximately November 2010, and continuing through in or about July 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANA NERISSA TOLENTINO, also known as "Nerie,"
FREDERICK MAGSINO, and
JENETTE GEORGE, also known as "Jiye,"

defendants herein, together with others known and unknown to the Grand Jury, did conspire to knowingly and willfully cause Rosner to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, to GEORGE to induce her to refer patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

3.     It was part of the conspiracy that beginning in or about November 2010, and continuing through in or about July 2012, defendants ANA NERISSA TOLENTINO, FREDERICK MAGSINO, and JENETTE GEORGE, together with others known and unknown to the Grand Jury, agreed that Rosner would pay kickbacks to GEORGE for (i) referring patients to Rosner, (ii) causing patients to begin new Start of Care cycles of home health care with

29

Rosner; and (iii) causing the re-admission of patients previously treated by Rosner. Through these payments, defendants ANA NERISSA TOLENTINO, FREDERICK MAGSINO, and GEORGE sought to increase the patient census at Rosner and to enrich themselves and Rosner.

4.     It was further part of the conspiracy that defendants TOLENTINO and MAGSINO agreed to cause Rosner to pay GEORGE $500 per patient referral and per patient repeat admission after five visits to a patient within a Start of Care cycle. TOLENTINO caused Rosner to pay GEORGE by check, typically in the amount of approximately $1,000 for two patient referrals, and agreed to pay for additional patient referrals in cash. As defendants ANA NERISSA TOLENTINO and FREDERICK MAGSINO knew, the agreement to make payments was intended to induce GEORGE to refer patients to Rosner for home health care services to be reimbursed by Medicare.

5.     In furtherance of and to effect the objects of this conspiracy, on or about April 12, 2012, in the Northern District of Illinois, and elsewhere, defendant ANA NERISSA TOLENTINO knowingly and willfully offered and paid, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $3,500, of which $1,000 was in the form of a check made payable to "Ttenej Senior Referral Agency," and $2,500 was in cash, to JENETTE GEORGE, also known as "Jiye," for her referral of patients to Rosner.

6.     In furtherance of and to effect the objects of this conspiracy, on or about April 12, 2012, in the Northern District of Illinois, and elsewhere, defendant GEORGE knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $3,500, of which $1,000 was in the form of a check made payable to "Ttenej Senior Referral Agency," and $2,500 was in cash, in return for her referral of patients to Rosner.

7.     In furtherance of and to effect the objects of the conspiracy, on or about May 17, 2012, in the Northern District of Illinois, and elsewhere, defendant ANA NERISSA TOLENTINO knowingly and willfully offered and paid, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $1,500, of which $1,000 was in the form of a check made payable to "Ttenej Senior Referral Agency," and $500 was in cash, to JENETTE GEORGE, also known as "Jiye," for her referral of patients to Rosner.

8.     In furtherance of and to effect the objects of this conspiracy, on or about May 17, 2012, in the Northern District of Illinois, and elsewhere, defendant GEORGE knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $1,500, of which $1,000 was in the form of a check made payable to "Ttenej Senior Referral Agency," and $500 was in cash, in return for her referral of patients to Rosner.

9.     In furtherance of and to effect the objects of this conspiracy, defendants ANA TOLENTINO, FREDERICK MAGSINO, and GEORGE did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, the purposes and acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

## COUNT FIFTEEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.    At times material to this Superseding Indictment:

a.    Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

b.    Paragraphs 1(b), 1(c) and 1(j) of Count One of this Superseding Indictment are incorporated here.

2.    Beginning in or about approximately May 2011, and continuing through in or about July 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANA NERISSA TOLENTINO, also known as "Nerie,"
FREDERICK MAGSINO, and
CARLA PHILLIPS-WILLIAMS,

defendants herein, together with others known and unknown to the Grand Jury, did conspire to knowingly and willfully cause Rosner to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, to PHILLIPS-WILLIAMS to induce her to refer patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

3.    It was part of the conspiracy that beginning in or about May 2011, and continuing through in or about July 2012, defendants ANA NERISSA TOLENTINO, FREDERICK MAGSINO, and CARLA PHILLIPS-WILLIAMS, together with others known and unknown to the Grand Jury, agreed that Rosner would pay kickbacks to PHILLIPS-WILLIAMS for (i) referring patients to Rosner, (ii) causing patients to begin new Start of Care cycles of home

32

health care with Rosner; and (iii) causing the re-admission of patients previously treated by Rosner. Through these payments, defendants ANA NERISSA TOLENTINO, FREDERICK MAGSINO, and PHILLIPS-WILLIAMS sought to increase the patient census at Rosner and to enrich themselves and Rosner.

4.      It was further part of the conspiracy that defendants TOLENTINO and MAGSINO agreed to cause Rosner to pay PHILLIPS-WILLIAMS $500 per patient referral and per patient repeat admission after five visits to a patient within a Start of Care cycle. As defendants ANA NERISSA TOLENTINO and FREDERICK MAGSINO knew, the agreement to make payments was intended to induce PHILLIPS-WILLIAMS to refer patients to Rosner for home health care services to be reimbursed by Medicare.

5.      In furtherance of and to effect the objects of this conspiracy, on or about April 19, 2012, in the Northern District of Illinois, and elsewhere, defendant ANA NERISSA TOLENTINO knowingly and willfully offered and paid, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $1,500, in cash, to PHILLIPS-WILLIAMS for her referral of patients to Rosner.

6.      In furtherance of and to effect the objects of this conspiracy, on or about April 19, 2012, in the Northern District of Illinois, and elsewhere, defendant PHILLIPS-WILLIAMS knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $1,500, in cash, in return for her referral of patients to Rosner.

7.      In furtherance of and to effect the objects of the conspiracy, on or about May 17, 2012, in the Northern District of Illinois, and elsewhere, defendant ANA NERISSA TOLENTINO knowingly and willfully offered and paid, directly and indirectly, overtly and

33

covertly, remuneration in the amount of approximately $500, in cash, to PHILLIPS-WILLIAMS for her referral of a patient to Rosner.

8.     In furtherance of and to effect the objects of this conspiracy, on or about May 17, 2012, in the Northern District of Illinois, and elsewhere, defendant PHILLIPS-WILLIAMS knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $500, in cash for her referral of a patient to Rosner.

9.     In furtherance of and to effect the objects of this conspiracy, defendants ANA TOLENTINO, FREDERICK MAGSINO, and PHILLIPS-WILLIAMS did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, the purposes and acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

## COUNT SIXTEEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      At times material to this Superseding Indictment:

a.      Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

b.      Paragraphs 1(b), 1(c) and 1(i) of Count One of this Superseding Indictment are incorporated here.

2.      Beginning in or about approximately June 2008, and continuing through in or about July 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANA NERISSA TOLENTINO, also known as "Nerie,"
FREDERICK MAGSINO, and
JENNIFER HOLMAN,

defendants herein, together with others known and unknown to the Grand Jury, did conspire to knowingly and willfully cause Rosner to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, to HOLMAN to induce her to refer patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

3.      It was part of the conspiracy that beginning in or about June 2008, and continuing through in or about July 2012, defendants ANA NERISSA TOLENTINO, FREDERICK MAGSINO, and JENNIFER HOLMAN, together with others known and unknown to the Grand Jury, agreed that Rosner would pay kickbacks to HOLMAN for (i) referring patients to Rosner; (ii) causing patients to begin new Start of Care cycles of home health care with Rosner; and (iii)

35

causing the re-admission of patients previously treated by Rosner. Through these payments, defendants ANA NERISSA TOLENTINO, FREDERICK MAGSINO, and HOLMAN sought to increase the patient census at Rosner and to enrich themselves and Rosner.

4. It was further part of the conspiracy that defendants TOLENTINO and MAGSINO agreed to cause Rosner to pay HOLMAN at least $300 per patient referral and per patient repeat admission after five visits to a patient within a new Start of Care cycle. As defendants ANA NERISSA TOLENTINO and FREDERICK MAGSINO knew, the agreement to make payments was intended to induce HOLMAN to refer patients to Rosner for home health care services to be reimbursed by Medicare.

5. In furtherance of and to effect the objects of this conspiracy, on or about April 26, 2012, in the Northern District of Illinois, and elsewhere, defendant ANA NERISSA TOLENTINO knowingly and willfully offered and paid, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $600, in cash, to HOLMAN for her referral of patients to Rosner.

6. In furtherance of and to effect the objects of this conspiracy, on or about April 26, 2012, in the Northern District of Illinois, and elsewhere, defendant HOLMAN knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $600, in cash for her referral of patients to Rosner.

7. In furtherance of and to effect the objects of the conspiracy, on or about June 21, 2012, in the Northern District of Illinois, and elsewhere, defendant ANA NERISSA TOLENTINO knowingly and willfully offered and paid, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $300, in cash, to HOLMAN for her referral of a patient to Rosner.

36

8.     In furtherance of and to effect the objects of this conspiracy, on or about June 21, 2012, in the Northern District of Illinois, and elsewhere, defendant HOLMAN knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $300, in cash, for her referral of a patient to Rosner.

9.     In furtherance of and to effect the objects of this conspiracy, defendants ANA TOLENTINO, FREDERICK MAGSINO, and HOLMAN did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, the purposes and acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

## COUNT SEVENTEEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      At times material to this Superseding Indictment:

        a.      Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

        b.      Paragraphs 1(b), 1(c) and 1(j) of Count One of this Superseding Indictment are incorporated here.

2.      On or about March 22, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

                        TITIS JACKSON, also known as "Titus,"

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $1,800, in cash, in return for defendant JACKSON referring patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

        In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

38

## COUNT EIGHTEEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     At times material to this Superseding Indictment:

a.     Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

b.     Paragraphs 1(b), 1(c) and 1(f) of Count One of this Superseding Indictment are incorporated here.

2.     On or about March 22, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

FREDERICK MAGSINO,

defendant herein, knowingly and willfully offered and paid, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $600, in cash, to EMMANUEL NWAOKOCHA as payment for the referral of patients including Patient RP to Rosner for the furnishing and arranging for the furnishing of a service for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

## COUNT NINETEEN

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      At times material to this Superseding Indictment:

      a.      Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

      b.      Paragraphs 1(b), 1(c) and 1(f) of Count One of this Superseding Indictment are incorporated here.

2.      On or about March 23, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

      EMMANUEL NWAOKOCHA, also known as "Ed Norton,"

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $600, in cash, in return for defendant NWAOKOCHA referring patients including Patient RP to Rosner for the furnishing and arranging for the furnishing of a service for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

      In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## COUNT TWENTY

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     At times material to this Superseding Indictment:

    a.     Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

    b.     Paragraphs 1(b), 1(c) and 1(f) of Count One of this Superseding Indictment are incorporated here.

2.     On or about March 30, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

FREDERICK MAGSINO,

defendant herein, knowingly and willfully offered and paid, directly and indirectly, overtly and covertly, remuneration in the amount of approximately $500, in cash, to MASOOD SYED as payment for the referral of Patient JE to Rosner for the furnishing and arranging for the furnishing of a service for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

## **COUNT TWENTY-ONE**

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     At times material to this Superseding Indictment:

a.     Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

b.     Paragraphs 1(b), 1(c) and 1(f) of Count One of this Superseding Indictment are incorporated here.

2.     On or about March 30, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

### MASOOD SYED,

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $500, in cash, in return for defendant SYED referring Patient JE to Rosner for the furnishing and arranging for the furnishing of a service for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## **COUNT TWENTY-TWO**

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      At times material to this Superseding Indictment:

    a.      Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

    b.      Paragraphs 1(b), 1(c) and 1(h) of Count One of this Superseding Indictment are incorporated here.

2.      On or about April 12, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

JENETTE GEORGE, also known as "Jiye,"

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $3,500, of which $1,000 was in the form of a check made payable to "Ttenej Senior Referral Agency," and $2,500 was in cash, in return for defendant GEORGE referring patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## **COUNT TWENTY-THREE**

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     At times material to this Superseding Indictment:

a.     Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

b.     Paragraphs 1(b), 1(c) and 1(j) of Count One of this Superseding Indictment are incorporated here.

2.     On or about April 19, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARLA PHILLIPS-WILLIAMS,

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $1,500, in cash, in return for defendant PHILLIPS-WILLIAMS referring patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## COUNT TWENTY-FOUR

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      At times material to this Superseding Indictment:

        a.      Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

        b.      Paragraphs 1(b), 1(c) and 1(j) of Count One of this Superseding Indictment are incorporated here.

2.      On or about April 26, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

                        TITIS JACKSON, also known as "Titus,"

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $2,400, in cash, in return for defendant JACKSON referring patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

        In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## COUNT TWENTY-FIVE

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.        At times material to this Superseding Indictment:

a.        Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

b.        Paragraphs 1(b), 1(c) and 1(i) of Count One of this Superseding Indictment are incorporated here.

2.        On or about April 26, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

JENNIFER HOLMAN,

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $600, in cash, in return for defendant HOLMAN referring patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## **COUNT TWENTY-SIX**

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      At times material to this Superseding Indictment:

        a.      Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

        b.      Paragraphs 1(b), 1(c) and 1(j) of Count One of this Superseding Indictment are incorporated here.

2.      On or about May 3, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

                    TITIS JACKSON, also known as "Titus,"

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $1,200, in cash, in return for defendant JACKSON referring patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

        In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## <u>COUNT TWENTY-SEVEN</u>

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.     At times material to this Superseding Indictment:

a.     Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

b.     Paragraphs 1(b), 1(c) and 1(h) of Count One of this Superseding Indictment are incorporated here.

2.     On or about May 17, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

JENETTE GEORGE, also known as "Jiye,"

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $1,500, of which $1,000 was in the form of a check made payable to "Ttenej Senior Referral Agency," and $500 was in cash, in return for defendant GEORGE referring patients to Rosner for the furnishing and arranging for the furnishing of services for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## COUNT TWENTY-EIGHT

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.    At times material to this Superseding Indictment:

    a.    Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

    b.    Paragraphs 1(b), 1(c) and 1(j) of Count One of this Superseding Indictment are incorporated here.

2.    On or about May 17, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARLA PHILLIPS-WILLIAMS,

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $500, in cash, in return for defendant PHILLIPS-WILLIAMS referring a patient to Rosner for the furnishing and arranging for the furnishing of a service for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

49

## COUNT TWENTY-NINE

The SPECIAL MARCH 2013 GRAND JURY further charges:

1.      At times material to this Superseding Indictment:

        a.      Medicare was a Federal health care program, as defined in Title 42, United States Code, Section 1320a-7b, that provided health benefits which were funded directly, in whole or in part by the United States Government.

        b.      Paragraphs 1(b), 1(c) and 1(i) of Count One of this Superseding Indictment are incorporated here.

2.      On or about June 21, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

                        JENNIFER HOLMAN,

defendant herein, knowingly and willfully solicited and received, directly and indirectly, overtly and covertly, remuneration from Rosner in the amount of approximately $300, in cash, in return for defendant HOLMAN referring a patient to Rosner for the furnishing and arranging for the furnishing of a service for which payment may be made in whole and in part under a Federal health care program, namely Medicare;

        In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## FORFEITURE ALLEGATION

The SPECIAL MARCH 2013 GRAND JURY further alleges:

1.     The grand jury incorporates here the allegations of this Superseding Indictment concerning violations of Title 18, United States Code, Sections 371 and 1347, and Title 42, United States Code, Section 1320a-7b(b)(2)(A), for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2.     As a result of their violations of Title 18, United States Code, Sections 371 and 1347, and Title 42, United States Code, Section 1320a-7b(b)(2)(A), as alleged in the indictment,

ANA NERISSA TOLENTINO, also known as "Nerie,"
FREDERICK MAGSINO,
EMMANUEL NWAOKOCHA, also known as "Ed Norton,"
MASOOD SYED,
TITIS JACKSON, also known as "Titus,"
JENETTE GEORGE, also known as "Jiye,"
CARLA PHILLIPS-WILLIAMS, and
JENNIFER HOLMAN,
ARMANDO TOLENTINO, also known as "Ding,"
GLORIA ZISMAN, and
LIONEL PAUL GASSMANN,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all right, title and interest they may have in any property, real and personal, that constitutes and is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

3.     If any of the forfeitable property described above, as a result of any act or omission by the defendants:

a.     Cannot be located upon the exercise of due diligence;

b.     Has been transferred or sold to, or deposited with, a third party;

51

c.    Has been placed beyond the jurisdiction of the Court;

d.    Has been substantially diminished in value; or

e.    Has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY